DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Chris Umberger, ) | Civil Action No. 5:12-cv-2095-JFA-KDW |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| Anthony Belcher[1], Warden, ) | |
| FCI Williamsburg, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

On July 10, 2012, Petitioner, Chris Umberger ("Petitioner" or "Umberger"), filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's and Petitioner's Motions for Summary Judgment. Respondent filed its summary judgment motion on September 17, 2012. ECF No. 26. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) the court advised Petitioner, on September 18, 2012, of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 27. On September 28, 2012, Petitioner filed a response in opposition to Respondent's motion. ECF No. 37. Petitioner also filed a Motion for Summary Judgment on September 18, 2012, ECF No. 30, and Respondent responded opposing Petitioner's motion on October 5, 2012, ECF No. 39. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 26, be granted.[2]

---

[1] Maureen Cruz is the Warden at FCI Williamsburg.
[2] Other pending motions are addressed within.

I.   Factual and Procedural Background

Petitioner's supervision was revoked on February 22, 2011, and he was sentenced to a 24-month term of imprisonment by the United States District Court of West Virginia.  ECF No. 26 at 2. Petitioner is presently confined in the Federal Correctional Institution Williamsburg ("FCI Williamsburg") in Salters, South Carolina.  ECF No. 4.  On April 9, 2012, Petitioner was released to a Community Corrections Center ("CCC") in St. Albans, West Virginia.  ECF No. 26-2 at 2.  Petitioner missed his bus to St. Albans and did not arrive at the CCC until April 11, 2012.  *Id.*  Petitioner was administered a drug test upon his arrival and he tested positive for cocaine.  *Id.*  Petitioner's specimen was then sent to Redwood Toxicology Laboratory which confirmed on April 19, 2012 that Petitioner's specimen tested positive for cocaine.  *Id.* at 3.  On April 20, 2012, a Center Discipline Committee ("CDC") hearing was conducted regarding Petitioner's positive drug test and Petitioner and his staff representative were present at the hearing.  *Id.*  Petitioner offered a written statement regarding the charges and Petitioner argued that he had taken prescription medications Adderall and Wellbutrin orally and Dibucaine topically which may have caused a false positive.  *Id.* at 15, 17.  The CDC reviewed a pharmaceutical drug chart and determined that these medications cannot produce a false positive for cocaine.  *Id.* at 15.  The CDC found that the act was committed as charged and sanctions were deferred to the Disciplinary Hearing Officer ("DHO") who certified the CDC's findings and imposed sanctions.  *Id.*  On April 23, 2012, Petitioner was released from the CCC and transported back to FCI Williamsburg.  *Id.* at 23.  On May 31, 2012, Petitioner inquired about his release plans and he was advised that it was his responsibility to advise FCI Williamsburg of his release plans and that they would provide transportation, and funds for meals, to his destination. *Id.* at 30.  On August 20, 2012, Petitioner submitted an inmate request to staff requesting halfway

house placement in Anchorage Alaska, ECF No. 26-2 at 31, and on September 10, 2012, Petitioner requested the manner and means that he wanted for transport to Alaska. *Id.* at 32. Petitioner was told that his unit team would determine the best means for his travel to Alaska. *Id.* Petitioner has a projected release date of November 23, 2012, with Good Conduct Time. ECF No. 26 at 1.

II. Discussion

A. Federal Habeas Issues

Petitioner raises the following two grounds in his federal petition for a writ of habeas corpus, quoted verbatim:

> **Ground One**: The right to due process. I was denied the right to confront, cross-examine, be heard, present evidence, call witnesses, etc. Hearing held behind Petitioner's back in another state, while he was in the hospital in another state.
>
> Supporting FACTS:[3]
>
> (1) That Petitioner had a medically inserted catheter. Which was inserted in Columbia, SC and medical records will support this. That Dibucaine and Lidocaine were used during this process and Petitioner arrived at the Halfway House (CCC) with Dibucaine, and catheter.
>
> (2) That the Petitioner did not have to remove catheter for urine exam. But was forced to. That his urethra was coated with these two medications which are both made from cocaine. The urine test came back positive for cocaine. A substance not used by Pet., since it caused him to nearly die of heart arrhythmia. (1994)(Medical Records)
>
> (3) That Petitioner had to have the catheter reinserted. Additionally, he passed a urine test within 8 hours. (Medical Records)
>
> (4) That Policy requires the urine bottles and tests to be secure away from other inmates. That the bottles and strips were accessible to all inmates and could be altered.

---

[3] Petitioner submitted an Addendum to his Writ of Habeas Corpus, ECF No. 20, that lists facts that support Petitioner's claims in Ground One.

(5) That the officer who tested Petitioner refused to charge Petitioner due to the forced removal of the catheter, so another employee who witnessed nothing charged Petitioner. (A policy violation).

(6) That institutional charges have two hearings. One, is a unit disciplinary committee (UDC), which with a hearing can send it to the Disciplinary Hearing Officer (DHO). Further, that on 4-20-12, the staff at the CCC had a meeting with the Petitioner. Later they claimed this was the UDC hearing. (Friday Morning)

(7) That the UDC recommended that I be returned to prison for further proceedings. (DHO Hearing). What further convinced the Petitioner that he wouldn't be sent back was, one, the U.S. Marshals did not come. Two, Petitioner was allowed to go on a pass immediately, and the next day.

(8) That the DHO hearing was held in absentia that very day in Maryland (Petitioner was 400+ miles away.) Petitioner was found guilty minus the ability to provide evidence, call witnesses, or testify. Minus due process (Friday afternoon)

(9) That Petitioner was ordered returned to prison, 80 days loss of goodtime, 270 lock up, loss of phone, email, visit, commissary.

(10) That Policy requires that inmates "tried in absentia" be given a "DHO hearing, ordinarily within 60 days of his return to prison."

(11) That the Petitioner tried diligently to have a hearing, even filing an appeal and filing a tort claim, all for naught.

(12) That Petitioner was denied a DHO hearing as they claim he had one on 4-20-12, in the afternoon. Further, the Petitioner was registered in a hospital to have tests ran. This was Charleston, WV. The hearing was held in Maryland.

(13) That a hearing should have been held by no later than July 11th, which was the 60th day [after return to prison].

(14) That a multitude of policy violations occurred at the so called UDC: (1) The investigator wasn't trained, would not call Redwood Labs and ask about the Dibucaine and Lidocaine. Instead, they looked at chart on medications that can cause a false-positive. These are for medications taken orally, not inserted directly in the urinary tract. (2) The UDS members were not trained or certified. It goes on and on, literally.

**Ground Two**: Releasing an inmate homeless far from home. Petitioner is a lifelong resident of West Virginia. Has a large extended family in WV. Is being shipped to Alaska in the dead of winter with no food, housing, or money based

solely on Judge's recommendation that petitioner be released out of WV. Release date: 11/12/12

Supporting FACTS: None.

ECF No. 4.

B. Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v.*

5

*Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C. Respondent's Motion for Summary Judgment

        1. Section 2241 Generally and Exhaustion Requirement

Generally, a habeas petitioner must present his claims to an appropriate forum before filing his petition in this court. This requirement of exhaustion is largely unavoidable. *Ex parte Hawk*, 321 U.S. 114, 117 (1944). "Unlike petitions brought under [28 U.S.C.] § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters, sentence computation, calculation of good time credits, prison disciplinary actions, and transfers." *Clemmons v. South Carolina*, C/A No. 0:08-607-RBH, 2008 WL 2845636, *1 (D.S.C. July 18, 2008).

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under § 2241. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-91 (1973) (requiring exhaustion in 28 U.S.C. § 2241 matter); *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief.") (internal quotation marks omitted). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

The Bureau of Prisons ("BOP") has promulgated regulations establishing a grievance procedure through which inmates can challenge any aspect of their confinement. *See* 28 C.F.R. §§ 542.10–542.15. Except in specified circumstances, the inmate must first present his or her concern to prison staff and attempt to resolve it informally before filing a formal Administrative Remedy Request. 28 C.F.R. § 542.13. If the attempt is unsuccessful, the inmate must file the formal Request with the appropriate official at the prison for consideration by the Warden within 20 calendar days after the date upon which the basis for the Request occurred. 28 U.S.C. § 542.14. DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located. *Id.* If the inmate is not satisfied with the Warden's response, he or she may submit an appeal to the appropriate Regional Director within twenty days of the Warden's response. 28 U.S.C. § 542.15. If the inmate is not satisfied with the Regional Director's response, he or she may submit an appeal to the BOP General Counsel within thirty days of the Regional Director's response. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. § 542.15(a).

Respondent contends that Petitioner has not exhausted his administrative remedies and submits the affidavit of Tami Cassaro, supervisory attorney for the United States Department of Justice, Federal BOP. Ms. Cassaro attests that Petitioner failed to properly file an appeal of the disciplinary action at issue with the Regional Director. ECF No. 26-1. Ms. Cassaro avers that two administrative remedies were received from Petitioner on July 3, 2012, Remedy Number 696146-R1 was rejected as untimely and Remedy Number 696146-R2 was rejected for failure to submit the appropriate number of continuation pages. *Id.* Ms. Cassaro attests that Petitioner was given 10 days to resubmit his appeal but he did not do so. *Id.* Respondent further contends that there is no evidence that Petitioner has attempted to file an administrative remedy concerning his

7

pending release plans. ECF No. 26 at 7. In response, Petitioner contends that he was required to attach the DHO report to appeal his sanctions and that "they withheld the DHO report for two months, and it was only given after [he] nagged staff daily and insistantly [sic]". ECF No. 37 at 1-2. Petitioner alleges that he received a copy on June 28, 2012 and he mailed his appeal this same day and filed an addendum to his appeal on July 16, 2012. *Id.* at 2. Petitioner contends "Ms. Cassaro has both as being denied on 7-11-12, which is not possible. (This is the first sign of perjury) The addendum was denied 5 days before it was mailed." *Id.* Petitioner further argues that his appeal was held until August 6, 2012 when it was denied as being "too late." *Id.* Petitioner contends that he again mailed the appeal on August 13, 2012 with a letter from his unit manager that explained that it was not Petitioner's fault his appeal was late; Petitioner claims he has not received a response to his appeal. *Id.* Petitioner contends that Ms. Cassaro has a pattern of finding his appeals late and "[i]n his 88 grievances or appeals filed since 2001, 21 were rejected as late, all 88 were denied. Wrong 88 times? [I] was on time and right every time. She has never granted one for anyone. 1000s, all late or wrong." *Id.* at 3.

Petitioner has not provided any evidence to support his assertions, and a review of the record reveals that Petitioner has not included copies of any of the administrative remedies that he purportedly filed. Petitioner's unsupported allegations regarding the grievance process and the administrative remedies that he purportedly filed are insufficient to overcome the undisputed evidence that Petitioner has failed to exhaust his administrative remedies on all of his claims. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("unsubstantiated allegations" are insufficient to defeat summary judgment). The undersigned recommends the summary judgment be granted to Respondent.

D. Petitioner's Motion for Summary Judgment

Petitioner moves for summary judgment arguing that he was tried in absentia and he was entitled to rehearing prior to his good time credits being taken. Petitioner asserts "that being denied this hearing is ground for dismissal and return of the lost goodtime without a hearing." ECF No. 30. Respondent opposes this motion and contends that Petitioner's CDC hearing that was conducted on April 20, 2012, "reflects that the due process requirements of *Wolff v. McDonn*ell, 418 U.S. 539 (1974), as well as BOP policy, were observed." ECF No. 39 at 2. The record before the court establishes that Petitioner was present during his CDC hearing and that the CDC notice and hearing procedures complied with due process. Petitioner was given 24 hours advanced written notice of the CDC hearing, was advised of his rights, and was afforded the opportunity to present evidence and call witnesses and had the assistance of a staff representative during his hearing. ECF No. 26-2 at 10-14. Petitioner was also able to offer a defense to the positive drug test that was evaluated and then rejected by the CDC. *Id.* at 14-15. Although Petitioner argues that he was tried in absentia, Petitioner's own records reveal that on April 20, 2010, he did not leave the CCC until 12:08 p.m. ECF No. 37-1 at 2. Petitioner's CDC hearing was held this same day at 11:09 a.m., and the documentation before the court indicates that Petitioner was present for the hearing. ECF No. 26-2 at 14-15. Accordingly, the undersigned recommends that Petitioner's Motion for Summary Judgment be denied.

E. Petitioner's Motion to Appoint Counsel, Discovery Motions, and Evidentiary Motions

On August 31, 2012, Petitioner moved to have the court appoint a lawyer to represent him in this matter. ECF No. 21. Petitioner contends that exceptional circumstances support his motion in that he has a brain injury that causes memory loss, and that he is being denied access

to copies, a working typewriter, a law library and postage. *Id.* On September 4, 2012, Plaintiff filed a Motion for Law Library Access, Typewriter, Copies and Legal Postage, ECF No. 23, arguing that he needs to research how hearings are held and how urine tests are given in support of his claims. On September 18, 2012, Petitioner filed a Motion for Evidentiary Hearing, ECF No. 31, a Motion for Issuance of Subpoenas, ECF No. 32, and a Motion to Produce, ECF No. 33. Petitioner's Motion for an Evidentiary Hearing argues that Petitioner needs to testify under oath so the court can better understand the facts surrounding this action. Petitioner's Motion for Issuance of Subpoenas and Motion to Produce seek documents from the CCC which administered Petitioner's positive drug screening. On September 26, 2012, Petitioner filed a second Motion to Produce, ECF No. 35, seeking documents from Respondent concerning his halfway house placement and documentation concerning Petitioner's release plans. On October 10, 2012, Petitioner filed a Motion to Strike, ECF No. 42, arguing that Respondent's exhibits #2 (H) and (J) concerning Petitioner's evaluation for the Residential Re-Entry Second Chance placement "were fraudulently manufactured, post-habeas, to appear as if they were pre-habeas" and therefore should be struck. Because the undersigned recommends dismissal of Petitioner's claims, Petitioner's motions are moot and should be denied.[4]

III. Conclusion and Recommendation

For the reasons discussed above, it is recommended that Respondent's Motion for Summary Judgment, ECF No. 26, be granted, and Petitioner's Motion for Summary Judgment, ECF No. 30, be denied, and the petition dismissed. The undersigned further recommends that Petitioner's Motion to Appoint Counsel, ECF No. 21, Motion for Law Library Access,

---

[4] In light of the undersigned's recommendation that Respondent's Motion for Summary Judgment be granted, Respondent's Motion to Stay Petitioner's motions, ECF No. 40, filed on October 5, 2012, should also be denied as moot.

Typewriter, Copies and Legal Postage, ECF No. 23, Motions for Evidentiary Hearing, ECF No. 31 and 35, Motion for issuance of subpoenas, ECF No. 32, Motion to Produce, ECF No. 33, Motion to Strike, ECF No. 42, and Respondent's Motion to Stay, ECF No. 40, be denied as moot.

    IT IS SO RECOMMENDED.

October 18, 2012                                           Kaymani D. West
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**